IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBBIE ANN BROMFIELD THOMPSON<br>1405 Kennedy Street, NW<br>Washington, DC 20011<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN UNIVERSITY OF ANTIGUA/<br>MANIPAL EDUCATION AMERICAS, LLC,<br>s/h/a GCLR, LLC<br>1 Battery Plaza, 33rd Fl.<br>New York, NY 10004<br><br>and<br><br>NBME<br>3750 Market Street<br>Philadelphia, PA 19104<br><br>Defendants. | No._____ |

## COMPLAINT
### (Discrimination in Violation of the Rehabilitation Act and the American with Disabilities Act)

### NATURE OF THE ACTION

1.      This is an action seeking redress for the unlawful discrimination on the basis of disability committed by American University of Antigua, an offshore medical school located on the Island of Antigua ("AUA") which has corporate offices in the United States of America, and specifically in New York City. AUA continuously failed to reasonably accommodate Plaintiff for her dyslexia disability in the taking of her exams including the ("USMLE" Step 2 Practice Exam), and terminated her from the university because she did not obtain a passing grade. Passage of the practice exams is a condition precedent for the taking of the official USMLE exam and failure

may result in dismissal from the university.  Plaintiff was unable to pass the practice USMLE Step 2 exam because she was not reasonably accommodated resulting in her dismissal from the university on July 4th, 2016.  She was just three credit hours shy of graduating and had attained a GPA of 3.65 out of 4.0.This action also includes state claims for breach of the New York City and State Human Rights Law, breach of contract, intentional/negligent infliction of emotional distress, and violation of the tort of good faith and fair dealing

2. The National Board of Medical Examiners ("NBME") is the official body responsible for sponsoring exams that will lead to the licensing of physicians in the United States and Canada. The NBME sponsored the practice exams taken by Plaintiff and assigned a proctor for the taking of the USMLE Step 2 practice exams on at least 3 occasions with full knowledge that the accommodation extended was unreasonable given that the NBME in sponsoring the similarly official exam extends wholly different terms and conditions reflecting the consensus in the medical, legal, and scientific community that "reasonable accommodation" meant that dyslexic students ought to be extended 2 days for the taking of the exam.  Plaintiff was required to complete the practice exam in one day over an 11-hour period.

3. The Rehabilitation Act and the American with Disabilities Act expressly prohibit discrimination on the basis of disability. *See* 29 U.S.C., Section 794, *et seq.,* and 29 U.S.C. Section 705 (201), stating that "no otherwise qualified individual with a disability in the United States, as defined in section 7(20) )29 U.S.C. Section 705 (201), shall, solely by reason of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal assistance….".  Section 29 U.S.C. 794 (a), *et seq.,* "is enforceable through Title V1 of the Civil Rights Act of 1964 which provides (*inter alia*) for the termination of federal assistance to recipients who discriminate in violation of Section 504" of the Rehabilitation Act.  Likewise, defendants have violated the American with Disabilities Act of 1990, as amended by the ADA Amendment Act of 2008 which prohibits

discrimination on account of disability which substantially limits one or more major life activities. As is set forth in this Complaint Plaintiff suffers from dyslexia, a disability that substantially limits her ability to read and learn.

5.      Plaintiff further grounds her Complaint on common law breach of contract, intentional and or negligent infliction of emotional distress, and contractual/tort breaches under the doctrine of good faith and fair dealing in the District of Columbia.

6.      Plaintiff brings this action against American University of Antigua and its agent Manipal Education America, LLC, s/h/a GCLR Llc based on disability in violation of the Rehabilitation Act, the American With Disabilities Act, the New York State and City Human Rights Act, and other state common law claims.

7.      Plaintiff's action against NBME is based on violations of the American With Disabilties Act, the Rehabilitation Act, and the New York State and City Human Rights Acts..

## PARTIES

8.      Plaintiff Debbie-Ann Bromfield-Thompson is an adult resident of the United States, residing in Washington, D.C. At all times relevant to this Complaint, Plaintiff suffered from a disability recognized under the Rehabilitation Act, the American With Disabilities Act, and the New York State and City Human Rights Act. At the time Plaintiff applied to AUA as a transfer student she resided in Washington, D.C. and has continued her residence throughout her tenure at AUA up to the date she was dismissed from the University on July 4th, 2016.

9.      Defendant AUA is an offshore medical school headquartered offshore in the country of Antigua. Students attending the University complete their first 2 years in Antigua and then relocate to the United States to complete their clinical rotations (also known as Clerkships) at various hospitals throughout the United States. Upon completion of their clerkships they sit for a series of licensure exams administered by the NBME before applying for residencies at

hospitals located throughout the United States and Canada. AUA recruits and accepts students from colleges and universities throughout the United States, including Howard University and George Washington University located in the District of Columbia. AUA is affiliated with St. Elizabeth's Hospital in Washington, D.C., which is a clinical site for some of its students. AUA alumni have matched residencies in the District of Columbia area, including Howard University and George Washington University.

9.      NBME is a private, non-profit organization with its principal office located in Philadelphia, Pennsylvania. NBME, along with State Medical Boards sponsors the United States Medical Licensing Examination ("USMLE"), a licensing examination for prospective doctors. NBME falls under the requirements of of section 309 of the American With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12189, et seq., and its corresponding regulations, 28 C.F.R. 36.09. NBME is also subject to the New York State and City Human Rights Acts by virtue of sponsoring licensing exams within New York State and New York City through testing centers and at medical colleges and universities. The NBME also sponsors practice and other exams on behalf of medical colleges and universities with medical programs throughout the country. Many of these exams are designed to aid students in preparing for the official USMLE Step 2 exam. Medical schools, including AUA, use the results from these exams to make up part of students' grades. The practice exam which is the subject of this lawsuit made up 20% of Plaintiff's grades. Moreover, failure to attain a passing grade on this exam subjected Plaintiff to dismissal. The NBME in an arrangement with AUA agreed to sponsor Plaintiff's taking of the exam under conditions NBME knew was not "reasonable accommodation". This is so because the NBME in sponsoring the similarly official exam extends wholly different terms and conditions to dyslexic students who take the exam, where as here, NBME claimed that it lacked the ability to offer same or similar exam taking terms and conditions for the practice exam, but nevertheless entered into an agreement with AUA to administer the exam with conditions that were not reasonable.

10.     Manipal Education Americas, LLC is listed on AUA's website as an entity to be contacted for any questions concerning the University, making this entity in effect its agent. It also appears that at some point Manipal Education Americas, LLC was referred to as GCLR, LLC.

**JURISDICTION**

11.     This Court has jurisdiction pursuant to 28 U.S.C. Section 1331. Plaintiff also seeks declaratory relief as authorized by 28 U.S. C. Sections 2201 and 2202.

12.     This Court may exercise jurisdiction over AUA and its agent, and NBME because defendant, AUA, has its principal United States office in New York City where it conducts business throughout the United States, including Washington, D.C. NBME is headquartered in Philadelphia, Pennsylvania but does substantial business in New York City and Washington, D.C. by sponsoring and proctoring various exams on behalf of medical schools and colleges including the practice exam (CCSE) which is the subject of this lawsuit. AUA is also authorized by the United States Department of Education to allow its students to apply for federally guaranteed student loans.

13.     This Court has personal jurisdiction over AUA and its agents and NBME pursuant to the laws of New York State and as well as Federal Rules of Civil Procedure 4(k)(1)(B) and 19. AUA and its agents and NBME regularly transact business in New York State.

14.     Venue in this Court is proper under 28 U.S.C. Section1391 as a "substantial part of the events or omissions giving rise to the claim occurred" within this jurisdiction. Although Plaintiff sat the practice CCSC exam at a site in Virginia sponsored by NBME and agreed upon by AUA, the decision to admit Plaintiff to the medical school flowed through AUA's New York's administrative office, the interactions between Plaintiff regarding clinical selection sites and other decisions occurred with personnel from AUA's New York office, and the decision to

terminate Plaintiff from the school came from AUA's New York office.  In the Fall of 2010 Plaintiff attended an orientation sponsored by AUA in New York City and completed her first clinical course work at AUA's assigned facility in New York City.  Plaintiff has never visited or attended any courses at AUA's campus located in the country of Antigua.

15.     Plaintiff did file a complaint with the Department of Education Office of Civil Rights which ruled adversely to Plaintiff.  That ruling was appealed but no decision has been issued in almost three years.  The exhaustion of administrative remedies is not a condition precedent to the filing of the instant lawsuit.

## FACTUAL ALLEGATIONS

16.     On January 5th, 2010 AUA admitted Plaintiff to its medical school as a 5th semester transfer student from St. Matthews University, an off shore medical school located in the Cayman Islands.  Although she was accepted for the May 20th, 2010 semester, her admission was deferred until the Fall of 2010 because AUA was unable to grant her request to start pre-clinical rotations at their New York City site which was closer to her Washington, D.C. residence.

17.     On December 14th, 2010 Plaintiff sought accommodation for the taking of the ICM shelf exam.  AUA was unsure about what to do because it was the first time a student had requested accommodation to take the ICM exam, and they had no department or personnel on board in the United States to handle accommodation requests.  It was suggested that she contact Dr. Rice in the country of Antigua because he was the person who taught a psychology course at that site.  Plaintiff contacted Dr. Rice and sent him via facsimile a 20-plus report from her psychologist detailing her need for accommodation.  On September 17th, 2010 Plaintiff took and passed the ICM exam after Plaintiff was granted accommodation of time and a half.

18.     Plaintiff waited roughly seven months to obtain her next rotation because AUA did not have sufficient sites for its clinical rotation in the United States.  Plaintiff began this clinical rotation in Family Medicine at Maryland General Hospital in July 2011  which ended in October

2011.

19. Plaintiff was scheduled to begin her next clinical rotation in November 2012, a wait of a little more than a year because AUA had limited sites. Prior to the start of the clinical rotation Plaintiff was contacted by her clinical coordinator, Maria Pimentel, who told her that the rotation had to be cancelled in favor of students whose graduation was imminent. Plaintiff was not assigned any clinical rotation (Pediatrics) until September 2012, an eleven month wait.

20. Because AUA had few sites for clinical rotations Plaintiff sought and was able to obtain clinical rotations on her own accord. For example, Plaintiff obtained clinical rotations on her own from Franklin Square Hospital in Baltimore, Maryland and from Union Memorial Hospital, in Baltimore, Maryland. Thus, even though Plaintiff began attending AUA for her clinical programs beginning Fall 2010, she was only assigned 2 clinical rotations by AUA in a 2-year span.

21. By the time AUA started assigning clinical rotations to Plaintiff on a consistent basis the school had changed its policies by instituting a requirement that all students should sit for the shelf exams and the Comprehensive Clinical Shelf Exam (CCSE). These are exams that were to be taken at the end of core clinical rotations.

22. When Plaintiff became eligible to take her shelf exam in Family Medicine, Plaintiff discovered that no arrangements were made for her accommodations, despite the fact that AUA had a 20-page report detailing the need for accommodation on file. When she asked that the exam be re-scheduled she was told that the AUA did not receive the notice in time to do so. Plaintiff took the exam without accommodation, and failed.

23. Plaintiff notified Executive Dean of Clinical Studies, Dr. Bell, about AUA's failure to recognize that she needed accommodation even though she had submitted a report to them. Plaintiff retook the exam and passed with a score that exceeded the minimum score required by AUA. The same was true with respect to the OB/GYN exam where upon being given

accommodation (time and a half) Plaintiff's passing grade exceeded the minimum score required by AUA.

24.     As a result of Plaintiff's complaints regarding her accommodation, AUA instituted a new policy to the effect that students seeking accommodation were required to notify the administration within 5 business days from the start of any clinical rotations. Plaintiff was also required to pay an extra monies to AUA in order to be accommodated.

25.     On June 11th, 2015 Plaintiff was administratively withdrawn from AUA. The reason for the withdrawal was vigorously disputed. AUA contended that Plaintiff had to be withdrawn because a student who has been inactive for more than "6 months is subject to administrative withdrawal". Plaintiff challenged the withdrawal because her second child was born in June 2015 and in the period leading up to the birth she was unable to travel for clinical rotations.

26.     On June 17th, 2015, AUA re-admitted Plaintiff to the medical school, but set forth the condition that Plaintiff complete the remaining requirements for graduation no later than "March 31, 2016", a daunting schedule given AUA's unreliability in arranging for accommodations and assigning sites for clinical rotations.

27.     AUA also conditioned Plaintiff's re-admission on passage of the Clinical Science Comprehensive Examination (CCSE) with a score of at least 79 in order to be certified to take the USMLE Step 2 CK. Pursuant to AUA's written policy at the time Plaintiff was able to sit the exam for an unlimited number of times until passage. The policy was later modified to limit to three attempts students who entered their 4th year in 2015, which did not apply to Plaintiff. According to AUA, failure to satisfy the requirements by the set date would result in dismissal.

28.     The new requirements imposed by AUA were not in effect at the time Plaintiff enrolled with the school. Plaintiff was of the belief that AUA was planning to retaliate against her for having vigorously advocated for reasonable accommodation.

29.     Plaintiff took the exam on three different occasions - 8-22-2014, 10-24-2014, and

8-28-2014, and was unsuccessful because she was accommodated with one and a half times the duration of the regular exam.

30. Recognizing that her failures had nothing to do with her level of preparation Plaintiff contacted Dr. Bell, the Executive Dean of Clinical Studies, who advised her to contact Dr. Rice in the country of Antigua.

31. Plaintiff wrote Dr. Rice seeking double time, who in turn responded that she needed to justify the request with recent testing certifying that she was dyslexic. To expedite the process, Plaintiff sen a letter to Dr. Rice from her clinical psychologist justifying the need for double time. Dr. Rice agreed to grant the request provisionally, pending receipt of the full report. Dr. Rice's approval came too late for Plaintiff to take the CCSE exam with double time. The full report from Dr. Rachna Varia was sent via facsimile to Dr. Rice in October 2015.

32. On November 25th, 2015 Plaintiff took the CCSE exam for the first time with double time accommodation which was unlike the previous three attempts which gave her one and a half extended time. Plaintiff sat the exam for 9 straight hours without any breaks in between and suffered excruciating pain in her feet in the last two hours of the exam resulting in Plaintiff guessing a significant numbers of answers just to get through the exam. According to the proctor at the NBME sponsored site she was not allowed to take breaks.

33. After Plaintiff was notified that she did not attain the required score on the exam Plaintiff contacted NBME directly to complain about the conditions under which she had previously taken the exam: either not being given sufficient time or in the one instance when she was given double time she got no breaks during the exam.

34. NBME explained that the official exam is given over a 2-day period and suggested that Plaintiff contact AUA and ask whether AUA would be willing to find a site where Plaintiff could take the exam over a 2-day period. NBME promised that it would send a proctor.

35.   On January 15th, 2016 Cheri Kershen, Manager NBME Test Administration, copied Plaintiff on a letter she had sent to AUA describing the procedures under which Plaintiff was able to sit the CCSE exam over a 2-day period. According to Ms. Kershen, AUA could attempt to make arrangements with an NBME approved site for Plaintiff to sit the exam.

36.   AUA was unable to locate an approved site. Dr. Bell referred Plaintiff to AUA's Ombudsman who had no understanding whatsoever as to the issues. Dr. Bell had also referred the matter to Dr. Juli Valtschanoff, AUA's Chief Proctor, in Antigua who stated in an email to Plaintiff that he was unable to locate a site for the taking of the exam over a 2-day period, and advised Plaintiff in an email to "take the exam like any other student".

37.   Because of AUA's delays in figuring out how to grant the accommodation, Plaintiff was butting up against the March 31st, 2016 deadline imposed pursuant to the grant of her re-admission to AUA. Consequently, Dr. Bell extended the deadline for completion to July 31st, 2016.

38.   It took AUA 8 months from the time of Plaintiff's last unsuccessful attempt (November 25th, 2015)to sit the CCSE exam to reschedule the exam with breaks, which took place on July 1st, 2016.

39.   NBME arranged with AUA and the Prometric Center located in Virginia to add more than double time to the exam to enable Plaintiff to take breaks  The way this plan was designed to work was that an extra one hour and four minutes would be built into the exam to enable Plaintiff to take breaks. However, the exam would not stop running during these breaks.

40.   On July 1st, 2016 Plaintiff took the exam and sat for 11 hours at a desk which had a large metal sheet underneath which blocked her from stretching her legs. When Plaintiff took breaks the exam would continue to run and when she returned the screen would go blank. Each time Plaintiff would notify the Proctor of the problem whereupon she would call in to the technical department for assistance. Appellant had to keep a mental time of her breaks as she

was not allowed to wear a watch. The exam had its own time on the screen but it kept running when she left for breaks. Each time Plaintiff returned from a break she had to be patted down, an event that caused her to panic even more because these extra delays caused time to run even more.

41. Despite the extra time Plaintiff experienced fatigue and pain which convinced her even more that this practice exam ought to have been given under the same conditions as the official exam: 2 days with breaks in between with the clock stopped during breaks.

42. At the end of the exam the Proctor gave Plaintiff a card to to call in the event any issues arose concerning the exam.

43. Plaintiff received a score of 72 on the exam.

44. Plaintiff had sent a letter to AUA explaining that the decision to have her sit an exam for an 11-hour period with breaks while the exam ran was unreasonable: she received the following letter from Kristal Booth, Registrar for AUA: " I am sorry to hear of the personal issues you faced with this exam. AUA's efforts (along with NBME and Prometric) to accommodate your testing needs have been more than reasonable and unfortunately we are unable to accommodate another attempt at this exam. This email is to confirm that based on your recent score, you have been dismissed from the University. You will receive a formal letter of dismissal from the promotions Committee within 1-2 days". If you wish to appeal this decision, you may do so at this time."

45. Plaintiff responded to Registrar Booth's email by noting that this was the first time AUA had given her a "halfway decent…but less than ideal accommodation" with respect to the CCSE practice exam. Plaintiff accused the school of basing its approach to accommodation on "trial and error". Plaintiff characterized the the efforts of accommodating her as "flawed" because of the failure to accommodate her over a 2-day period as was recommended by NBME.

46.     On July 15th, 2016 Plaintiff appealed AUA's decision to dismiss her from their medical school.  On July 17th, 2016 the AUA Appeals Committee acknowledged receipt of the appeal.  However, the merits of Plaintiff's appeal was never addressed.  Dr. Rice, who was head of AUA's Disability Department, was also Chairman of the Appeals Committee for AUA.

47.     At the time Plaintiff was dismissed from AUA she was indebted in excess of $200,000.00 in student loans associated with pursuit of her medical degree.

48.     Plaintiff has struggled to keep her loans current and is behind in payment on one loan and is paying lesser sums onto other under a deferment program.

49.     Plaintiff has suffered extreme emotional distress as a result of AUA's conduct at a time when Plaintiff was just 3 credit hours shy of completion and had maintained a GPA of 3.65.  Plaintiff was preparing for residency and had obtained excellent evaluations for inclusion in her application.

50.     Plaintiff is a wife and mother of two children who always wanted to become a doctor but that ambition is gradually slipping away as a result of AUA's callous conduct.

## FIRST CLAIM FOR RELIEF

### Violation of the Rehabilitation Act
### (against AUA )

51.     Section 504 of the Rehabilitation Act, 29 U>S>C., Section 794 provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or captivity receiving Federal  financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

52.     Because dyslexia limits at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the Rehabilitation Act as set forth in two psychological reports that were furnished to AUA.

53.     AUA is a recipient of federal FASFA loans on behalf of its students and therefore is

covered under the Act.

54.     Plaintiff was able to pass all her exams when she was reasonably accommodated with the appropriate time duration., abet she had to proactive in ensuring her own accommodations.

55.     When Plaintiff realized that she was encountering problems with the CCSE exam she wrote to Doctor Rice explaining that the 1.5 hours accorded in previous exams was unworkable because of the complexity and length of the CCSE exam.

56.     Although AUA consented to extend double time for the CCSE exam they claimed that they were unable to arrange a suitable site for Plaintiff to sit the exam over 2 days. [*years* crossed out, "days &" handwritten]

57.     In fact, one AUA administrator told Plaintiff that she should sit the exam like any other student.

58.     Plaintiff takes the view that the school made very little effort to find a suitable site for the taking of the exam over a 2 day period as they believed that agreeing to extend 2 hours marked the end of their responsibility to extend reasonable accommodation.

59.     Plaintiff had to sit for 11 hours in the taking of the exam when the official exam is given over a 2-day period.  The conditions under which the exam had to be taken was outrageous (11 hours with breaks in between while the exam ran) and did not constitute "reasonable accommodation" contemplated by the Rehabilitation Act.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE AMERICAN WITH DISABILITIES ACT
### (as to AUA its agents and NBME)

60.     The American with Disabilities Act, 42 U.S.C.Section 12101, *et seq.,* prohibits discrimination against qualified individuals because of a disability.

61.     Dyslexia substantially limits at least one of Plaintiff's major life activities, learning and taking exams.

62.     NBME and AUA were well aware that the official exam was given over a 2-day period

and should never have agreed to offer the exam to Plaintiff to sit for a 11-hour period in one day.

63.     AUA intentionally imposed arbitrary deadlines which deadlines for the completion of Plaintiff's degree knowing that through their own failures Plaintiff was unable to obtain clinical sites to complete various courses.

64.     AUA's deadlines were designed to punish Plaintiff for having been proactive in securing accommodation for her exams. In fact, the Registrar's dismissal letter stated that AUA had accommodated Plaintiff enough.

65.     Both AUA and NBME are covered by the ADA and they knew that requiring Plaintiff to sit an exam over an 11 hour period did not constitute reasonable accommodation.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

### (against AUA and its agents)

66.     Plaintiff was enticed to enroll at AUA by promises that AUA had clinical sites scattered around the United States for the completion of course work required to graduate.

67.     AUA had few sites causing Plaintiff to wait for long stretches to enroll in rotations. Over a 2-year period AUA was able to find Plaintiff just two clinical sites.

68.     AUA breached its contract with Plaintiff by sending a follow-up termination letter on or about July 5th, 2016, noting that Plaintiff was being removed from the school for failure to complete all the course requirements within a fixed time period.

69.     The long wait for clinical sites was the fault of AUA, not Plaintiff, and therefore no arbitrary setting of deadlines to complete course work should have been instituted. In fact, AUA had first set March 31, 2016 as deadline for completion of all course work, but later changed the date to a July 31st, 2016 deadline because it experienced delays in furnishing accommodation for the CCSE exam.

70.     AUA consistently and arbitrarily changed the terms of Plaintiff's agreement with the

university by revising and adopting new rules and regulations that altered its previous promises to Plaintiff.

70. Although AUA had ultimately fixed July 31st, 2016 date for Plaintiff to complete all course work, it nevertheless terminated Plaintiff from the school on July 3rd, 2016.

71. AUA's breach of contract left Plaintiff with astronomical student loan payments with little opportunity to earn a good enough living to pay back these loans.

## FOURTH CLAIM FOR RELIEF
## (against AUA and its agents)

### Breach of the Duty of Bad Faith and Fair Dealing

72. AUA's acted in bad faith by breaching its duty to act fairly and in good faith.

73. Plaintiff did not receive the bargained for education. At the time Plaintiff was abruptly terminated she had a 3.65 GPA and was only 3 credit hours shy of graduating.

74. AUA knew that Plaintiff required accommodation with respect to the taking of exams but Plaintiff rarely was accorded accommodation without a struggle.

75. In fact, Plaintiff was required to pay for the privilege of being accommodated by finding extra funds to subsidize appropriate rooms for the taking of the exams.

## FIFTH CLAIM FOR RELIEF
## (against AUA and its agents)

### Intentional /NegligentInfliction of Emotional Distress

76. AUA's conduct was extreme and outrageous causing Plaintiff severe emotional distress.

77. This distress took the form of loss sleep, loss of appetite and loss of weight.

78. Plaintiff has continued to suffer emotional distress from AUA's conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against AUA and NBME and award the following relief:

    a.    Declaratory relief, including but not limited to a declaration that AUA discriminated against Plaintiff in violation of the Rehabilitation Act.

    b.    Declaratory relief, including but not limited to a declaration that AUA, its agents and NBME discriminated against Plaintiff by failing to grant reasonable accommodation under the ADA. ~~said Act.~~

    c.    Appropriate injunctive relief, including but not limited to Plaintiff's reinstatement to AUA and an order restraining AUA/NBME from engaging in any further discrimination against Plaintiff.

    d.    Removal of any and all derogatory information contained in Plaintiff's student record that is connected to her dismissal and efforts to seek reasonable accommodation.

    e    Compensatory and consequential damages for breach of contract and emotional distress and bad faith actions.

    f.    Punitive damages against AUA.

    g.    Pre-judgment and post-judgment interest at the highest lawful rate

    h.    Attorneys' fees and cost of this action;

    i    Any such further relief the Court deems appropriate.

Respectfully submitted,

*[signature]*

Debbie-Ann Bromfield-Thompson, *pro se*
1405 Kennedy Street, NW
Washington, DC 20011
Tel: 202-534-9164
Email: debibromfield@hotmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Debbie-Ann Bromfield-Thompson

                                    Plaintiff(s),

    -against-

American University of Antigua
Manipul Education Americas, LLC
NBME
                                    Defendant(s).

Docket No: _____CV_____( )( )

NOTICE OF PRO SE APPEARANCE

I hereby enter an appearance on my own behalf in this action and request:

(please check one option below)

☐ that all future correspondence be mailed to me at the address below, or

☒ that all future correspondence be e-mailed to me at the e-mail address below. I have completed the attached Consent to Electronic Service.

I understand that if my address or e-mail address changes, I must immediately notify the Court and all parties.

Debbie-Ann Bromfield-Thompson    ☒ Plaintiff ☐ Defendant
Name (Last, First, MI)

1405 Kennedy St, N.W Washington DC 20011
Address          City              State       Zip Code

202-534-9164                debibromfield@hotmail.com
Telephone Number            e-mail address

06-25-19                    [Signature]
Date                        Signature

```
ORIGIN ID:MXYA   (000) 000-0000        SHIP DATE: 25JUN19
EVERALD FITZGERALD THOMPSON            ACTWGT: 0.30 LB
                                       CAD: 6990792/SSF02002
52 HAMILTON ST NW

WASHINGTON, DC 20011                   BILL CREDIT CARD
UNITED STATES US

TO  PROSE UNIT
    US DISTRICT COURT
    40 FOLEY SUARE
    ROOM 105
    NEW YORK NY 10007
(000) 000-0000            REF:
INV:
PO:                       DEPT:
```



**FedEx** Express

**WED — 26 JUN 10:30A**
TRK# 7881 0900 0214   **PRIORITY OVERNIGHT**
0201

**E3 PCTA**                    10007
                           NY-US  EWR